SERRANO, DEMANDANTE Y APELANTE, *v.* SUCESIÓN SANTOS, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Arecibo en pleito sobre *injunction* para recobrar posesión material de finca rústica.

No. 1449.—Resuelto en junio 24, 1916.

INJUNCTION PARA RECOBRAR POSESIÓN MATERIAL DE PROPIEDAD INMUEBLE—JURAMENTO DE LA DEMANDA—FALTA DE OBJECIONES POR DEFECTO EN EL JURAMENTO—HECHOS PROBADOS—DESESTIMACIÓN DE LA DEMANDA.—De acuerdo con la ley sobre *injunction* para recobrar posesión material de propiedad inmueble de 1913, la demanda debe ser jurada. Sin embargo aun cuando el juramento no se ajuste exactamente a lo prescrito en el artículo 118 del Código de Enjuiciamiento Civil, si no aparece que fuera objetado por la parte demandada y se entra a juicio y por virtud de declaraciones de testigos se comprueban los hechos alegados por el demandante, el defecto existente no puede servir de base para desestimar la demanda.

ID.—POSESIÓN—TENENCIA—ARRENDAMIENTO.—Las palabras "posesión material" usadas en la Ley No. 43 de 1913, comprenden los conceptos de "posesión"

y ''tenencia'' de la antigua ley de Enjuiciamiento Civil, (artículo 1649 de la misma). Aunque arriende su propiedad, el dueño no se desprende en absoluto y en cuanto a todos de la posesión material, pudiendo sostenerse que continúa en esa posesión por medio del arrendatario.

Id.—Descripción de Fincas—Corrección de la Falta en Juicio.—La falta de describirse debidamente en la demanda la exacta porción de terreno reclamada, puede subsanarse mediante prueba en el acto de la vista.

Id.—Violencia—Fuerza Física—Engaño—Voluntad del Poseedor.—La violencia que requiere la ley No. 43 de 1913, no exige necesariamente el empleo de fuerza física o engaño, bastando sólo que el despojo se verifique contra la voluntad del poseedor o sin el concurso de ella.

Deslinde—Colindancias—Línea Divisoria.—Cuando al practicarse el deslinde de una finca uno de los colindantes no está conforme con la línea divisoria tal y como la trazó el agrimensor de la otra parte, es necesario acudir a los tribunales para dirimir el conflicto.

Exposición del Caso—Prueba no. Transcrita.—Aun cuando una carta presentada y admitida como prueba en el acto del juicio no se transcriba en la exposición del caso, si por los otros datos consignados, en la dicha exposición, es posible fijar la naturaleza de la carta omitida y conocida dicha naturaleza se llega a la conclusión de que la carta no alteraría en modo alguno el juicio formado por la corte de apelación con respecto a la revocación de la sentencia apelada, la omisión del repetido documento no puede servir de base por sí sola para la confirmación de la sentencia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Luis Mercader.*

Abogado de la apelada: *Sr. Félix Santoni.*

El Juez Asociado Sr. del Toro emitió la opinión del tribunal.

El presente es un caso sobre *injunction* para recobrar la posesión material de cierta parcela de terreno. La acción que se ejercita se basa en la ley No. 43 de 1913.

En la demanda, presentada el 1 de septiembre de 1915, se alegó que la demandante es dueña de cierta finca rústica de ocho cuerdas, sita en Sabana Hoyos, de Arecibo, que se describe en la forma corriente en esta isla, y que los demandados violentamente privaron a la demandante, del 29 al 30 de agosto de 1915, de una faja de terreno de su referida finca ''como de tres metros de ancho que coge todo el largo de la colindancia sud por donde tocan los demandados, haciendo colindancia la faja predicha por la parte sud con la aludida sucesión demandada y por el norte, el resto de la finca de la demandante, en cuya faja se encuentra un extenso número de

palmas de coco." Se hacen además en la demanda las ale-
gaciones usuales en esta clase de acciones.

La sucesión demandada excepcionó la demanda y la con-
testó en debida forma. En el acto del juicio ambas partes
presentaron sus pruebas y el 23 de octubre de 1915 la corte
dictó sentencia en contra de la demandante. Esta, entonces,
interpuso el presente recurso de apelación.

Varios fueron los fundamentos de la sentencia recurrida,
a saber: 1, que el juramento de la demanda es defectuoso;
2, que no corresponde a la demandante la acción que ejercita,
por no haberse demostrado que estuviera en la posesión
material del terreno que reclama; 3, que no se describió la
propiedad conforme ordena el artículo 125 del Código de En-
juiciamiento Civil; 4, que la prueba no fué suficiente para
demostrar un título a favor de la demandante; 5, que tampoco
fué la prueba suficiente para fijar la exacta porción de terreno
reclamada, y 6, que no se demostró violencia alguna por par-
te de la demandada.

1. Hemos examinado el juramento que aparece al pie
de la demanda prestado por el abogado de la demandante y
en realidad no se ajusta exactamente a lo prescrito en el
artículo 118 del Código de Enjuiciamiento Civil. Sin em-
bargo, como no aparece que dicho juramento fuera objetado
por la parte demandada y como se entró a juicio y por virtud
de declaraciones de testigos debidamente juramentados se
probaron, como luego veremos, los hechos alegados por la
demandante, el defecto existente no pudo ni puede servir de
base para desestimar la demanda.

2. El juez de distrito se expresa en su sentencia así:

"El objeto del *injunction* que provee la ley No. 43 de 1913, en
su sección 1ª., es para recobrar la posesión material de la propiedad
inmueble, cuando una parte demuestre que ha sido privado de dicha
posesión material, y en el caso presente, tenemos, que según claramen-
te se desprende de la misma prueba de la demandante, ésta no tiene
la posesión material de la finca que se describe en la demanda. como
suya, sino José Santiago Román, quien, por tanto, sería el autorizado

para ejercitar la acción que establece la precitada ley No. 43 de 1913; pues corresponde el interdicto o *injunction* para recobrar, a todo el que se halle en posesión material o tenencia de la cosa lo mismo al legítimo poseedor que al mero detentador.''

A nuestro juicio no es posible aceptar el criterio sustentado por el juez sentenciador por ser contrario al espíritu de la ley No. 43 de 1913.

Veamos lo que dice la sección 1 invocada. Es como sigue:

''Se concederá un *injunction* para recobrar la posesión material de propiedad inmueble cuando una parte demuestre ante la corte que ha sido privada de la posesión material por actos violentos o fraudulentos de la otra, a menos que tales actos fueren ejecutados por virtud de procedimiento legal.''

La antigua ley de Enjuiciamiento Civil de Cuba y Puerto Rico prescribía en su artículo 1649, lo que sigue:

''El interdicto de retener o de recobrar, procederá cuando el que se halle en la posesión o en la tenencia de una cosa, haya sido perturbado en ella por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojado de dicha posesión o tenencia.''

Y comentando Manresa ese artículo se expresa así:

''De lo expuesto se deduce, que el interdicto de recobrar, no sólo compete al propietario y usufructuario, que son los que tienen la *posesión* jurídica, sino también al inquilino, arrendatario, colono, depositario y comodatario, al que tiene la cosa en prenda, y aun al que la tiene por fuerza, clandestinamente o por ruegos, los cuales sólo se hallan en la *tenencia* de la cosa.'' 6 Manresa, Ley de Enjuiciamiento Civil, 139.

En nuestra opinión las palabras *posesión material* usadas en la ley vigente, comprenden los conceptos de posesión y tenencia de la ley antigua. Aunque arriende su propiedad, el dueño no se desprende en absoluto y en cuanto a todos de la posesión material, pudiendo sostenerse que continúa en esa posesión por medio del arrendatario.

3. Basta leer la descripción de la porción de terreno que según la demanda fué ocupada por la demandada, para con

cluir sin esfuerzo alguno que el juez sentenciador estuvo en lo cierto al consignar que no cumple con las exigencias del artículo 125 del Código de Enjuiciamiento Civil. La descripción que se da es confusa y sería difícil con ella sola como base identificar la faja de terreno reclamada. Sin embargo, el defecto apuntado quedó corregido por virtud de la prueba practicada en el acto de la vista, como veremos más adelante.

4. Si bien es cierto que la demandante no presentó documento público o privado alguno creditivos del dominio de la finca en cuestión, surge tan claro su derecho dominical de muchas de las declaraciones de los testigos, que no vemos cómo el juez de distrito pudo consignar como uno de los fundamentos de su sentencia, la falta de prueba del título de la demandante, tanto más tratándose como se trata de un pleito en que lo que se discute es el hecho de la posesión. La misma parte demandada reconoció el derecho de la demandante al tratar con ella como con la verdadera colindante de la parte norte de su finca, a los efectos del deslinde que, según veremos después, trató de practicar con su consentimiento.

5. Hemos dicho que el error cometido al no describirse debidamente en la demanda la exacta porción de terreno reclamada, quedó subsanado en el acto de la vista.

Declarando la demandante Gregoria Serrano, se expresó así:

Que los demandados se han posesionado de una colindancia de sus terrenos, al sud, "en una extensión de dos varas de fondo a morir en nada." *A preguntas del juez:* "que son dos varas, para arriba muy poco, que es para abajo, dos varas de fondo; que partiendo de lo mismo de ella los Borrero han cogido dos varas de fondo a salir arriba, ellos hicieron un ángulo nada más que por donde queda el palmar." *A preguntas de su abogado;* "que ese palmar es de ella; que cogieron dos metros e hicieron un codo, cogiendo el palmar y rajando hacia abajo, fino hacia arriba y ancho hacia abajo, como un listón o un ángulo, o un codo, o una curva." *A preguntas del abogado de los demandados:* "que ha dicho que

la faja de terreno tiene dos varas de fondo y termina en nada, como una curva; en algunos sitios tiene dos varas y en otros sitios no tiene nada.''

El testigo José Santiago, ocupante de la finca de la Serrano en el momento del despojo de la porción reclamada, dijo: que la Sucesión Santos ha tomado parte de la finca de ocho cuerdas, como dos o tres varas a morir en nada, del sur hacia el norte, cogiendo de saliente a poniente de la finca de Gregoria Serrano * * *; que los alambres que cercaban la colindancia quedan ahora a la parte afuera de los alambres que han puesto los Borrero.

Francisco Moreda, hijo del antiguo dueño de la finca de la demandante, manifestó que fué llevado al terreno por los mismos demandados, y declaró entre otros particulares: ''que cuando fué a ver la colindancia sur de la finca referida observó que una línea que habían tirado por orden de los Borrero se introducía en lo de Gregoria Serrano en una extensión a todo el largo de la finca y dos o tres varas de ancho, quedando por medio de esa línea una de palmas de coco que la tenía de yerba de guinea. * * * Conoce que el palmar de cocos es de la finca nuestra que es ahora de Gregoria Serrano, y nadie se lo discutió hasta ahora, pues siempre ha pertenecido a dicha finca.''

Nicolás Moreda dijo que conocía la finca de la demandante ''que tenía palmas por la colindancia sur; * * * la parte esa de las palmas pertenecía a la finca de ocho cuerdas.''

Martín Soto declaró haber vivido en la finca de los demandados; que el alambre que hoy divide esa finca de la de la demandante está en la finca de ésta; ''que por la parte del sur la finca de ocho cuerdas tiene palmas de coco y está sembrada de yerba de guinea''; que esa parte pertenece a la finca de Gregoria Serrano.

Este testigo fué comisionado para entregar la finca a los demandados cuando éstos la compraron y dice que cuando dió los puntos ''la faja esa pertenecía a Manuel Moreda, que

es hoy Gregoria Serrano.'' Y a preguntas del juez contestó: ''que todo el tiempo que estuvo en la finca de los Borrero (hoy de los demandados) no hubo nada que la separase de la de Moreda (hoy de la demandante); que por lo pronto no hubieron separaciones; *que había entre las fincas como señal un palmar de cocos;* que cree que el palmar de cocos era de la finca de Moreda y no de los Borrero, porque ya la había conocido antes; que la separación entre las fincas es que ese palmar está en la finca de Gregoria Scrrano; que se funda para decirlo en que siempre se ha respetado así desde muchos años a esta parte; que así conoce respetándose eso a lo menos cuarenta años; que de la entrega que él hizo, hace tres o cuatro años; que él la tuvo como encargado seis o siete meses, y antes de tenerla como encargado vivía en la finca de medianero.''

Vicente Rodríguez dijo que conocía la finca de 8 cuerdas desde hacía cuarenta años; ''que antes del mes de agosto referido, esa parcela de las palmas de coco pertenecía a la finca de ocho cuerdas de Gregoria Serrano, hace más de quince años que lo conoce así.''

Y, por último, Leandro Rodríguez, depuso: ''que la finca esa de la sucesión Santos fué de su abuelo, por lo que conoce la colindancia sur; que la parte esa, la faja que tiene las palmas de coco y la yerba de guinea desde que él la conoce pertenece a la finca que era de la sucesión Moreda, la cual es hoy de Gregoria Serrano, y que siempre fué respetada por su abuelo y los hijos y por ellos que fueron nietos quienes también respetaban esa parte; que de quince años para acá los cocos de esa faja los gozaba Gregoria Serrano así como la yerba de guinea.''

Hasta aquí la prueba de la demandante. Citaremos además cierta parte pertinente de la declaración del primer testigo de la demandada que robustece y completa la prueba del actor. Ese testigo fué el agrimensor a quien la sucesión demandada encomendó la práctica del deslinde a que nos referiremos más adelante y dijo que para fijar la colindancia norte, o sea

la sur de la finca de ocho cuerdas, avisó al dueño de ésta y vino Santiago *esposo* de la Serrano, y le dijo que "los puntos determinantes de la línea estaban claros," que eran un ortegón al pie de un pomarrosas y un poste de ortegón que había en la otra esquina. Que Santiago admitió que la línea cogería dos o tres palmas. Que Santiago se retiró; "que al ir a trazar la línea, notó a simple vista que no eran dos o tres palmas como él decía, sino que eran todas las palmas de coco y entonces dijo: vamos a trazar, a marcar la línea, y avisaré a Gregoria Serrano y José Santiago que son todas las palmas."

Si bien no es posible trazar con los datos aportados por los testigos la exacta figura de la porción reclamada, queda por ellos identificada dicha porción de tal modo que el agente judicial encargado de cumplir la sentencia que se dicte, no encontrará dificultad alguna para su ejecución. Los dos extremos de la colindancia sud de la finca de la demandante y norte de la de la demandada, están claros. En una esquina un ortegón al pie de un pomarrosas y en la otra otro ortegón. La diferencia surgió cuando se quiso enlazar esos dos puntos por una línea recta, cuando la realidad existente no era esa línea, sino la formada por las últimas palmas situadas al sur del palmar que han descrito los testigos y que se levanta todo en la finca de ocho cuerdas.

6. La corte sentenciadora sostiene, por último, que no habiéndose demostrado que la parte demandada actuara violentamente, no cabe la concesión del *injunction*. Y sostiene, además, dicha corte, que la prueba tiende a demostrar que la colindancia quedó finalmente fijada por el deslinde practicado que fué un acto ejercitado por virtud de un procedimiento enteramente legal citando al colindante.

En cuanto al deslinde diremos que la prueba demuestra en verdad que la parte demandada encomendó a un agrimensor el deslinde de su finca y que se citó para tal acto a la demandante, pero también demuestra la prueba que jamás la demandante mostró su conformidad con la línea tal como

la trazó el agrimensor de la sucesión demandada.   Siendo esto así, cae por su base toda la fuerza que pueda tener el deslinde.   Desde el momento en que uno de los colindantes no estuvo conforme, no pudo el otro fijar por sí solo la línea divisoria, ya que a nadie es lícito tomarse la justicia por su mano, sino que debe acudirse a los tribunales para conseguirla, "ca por aquesto son puestos los judgadores en los lugares, porque los omes alcancen derecho por mandamiento dellos, é non lo puedan por ellos mesmos fazer", como dice la ley 14, tít. 10 de la Partida 7ª.

Y en cuanto a la violencia, expondremos, de acuerdo con lo decidido ya por esta misma Corte Suprema, que la que requiere la ley No. 43 de 1913, no exige el empleo de fuerza física o engaño, bastando sólo que el despojo se verifique contra la voluntad del poseedor, o sin el concurso de ella. Véase *Mattei* v. *Badillo,* 21 D. P. R. 171, 177.

7.  Sólo nos resta investigar la siguiente cuestión suscitada al fin del alegato de la parte apelada, en la siguiente forma:

"Además, la exposición del caso no contiene todas las pruebas, pues en vano hemos buscado en ella una carta admitida como prueba, por lo que es de aplicación la doctrina de que, cuando el récord no inserta toda la prueba presentada ante el tribunal sentenciador, debe confirmarse la sentencia. *Freyre* v. *Cabassa* et al., 21 D. P. R. 103."

Examinada la exposición del caso resulta que en efecto cuando declaraba el testigo de la parte demandada Benigno Martínez Badía, se le presentó cierta carta escrita por él al agrimensor Puig con referencia al deslinde.   El testigo la reconoció y la carta fué admitida como prueba, sin que aparezca trascrita en la exposición del caso; pero, atendidas las circunstancias concurrentes, la omisión de la carta en el récord no puede servir de base para la confirmación de la sentencia apelada.

Parece que dicha carta tendía a probar que el dicho testigo, que había representado a la demandante en el acto del deslinde, había mostrado su conformidad con la línea trazada

por el agrimensor Puig. Aceptando que así fuera, tal conformidad no podría decidir definitivamente sobre los derechos de la demandante porque no se probó que ésta hubiera autorizado al testigo para prestarlo. Por el contrario, el testigo, que como hemos consignado fué presentado por la parte demandada, declaró bajo juramento ''que Gregoria Serrano no lo autorizó a él para que cediera esa porción de terreno que cogía la línea; que dicha señora nunca dió su conformidad.''

Se ve, pues, que la carta no produciría el efecto de hacer variar el juicio que del caso hemos formado y bajo tales circunstancias, repetimos, su falta de transcripción en el récord no puede servir de base para la confirmación de la sentencia apelada.

En resumen, diremos, que el estudio de este pleito revela errores y deficiencias cometidos por la parte demandante y apelante desde que entabló su demanda hasta que sometió su apelación a este tribunal. Sin embargo, tales errores y deficiencias no son bastantes, como hemos visto, para impedir la actuación reparadora de la justicia pedida por la demandante. Es un hecho indiscutible para nosotros que la demandante estaba en posesión de la faja de terreno que reclama y que contra su voluntad se apoderó de ella la sucesión demandada. Si la sucesión demandada cree que tiene mejor derecho a la propiedad de dicha faja, que reclame ese derecho ante el tribunal de justicia que corresponda y en la forma que fuere procedente, pero no es posible consentir que se tome la *justicia* por sí misma.

En tal virtud procede la revocación de la sentencia apelada dictándose en su lugar otra por la cual quede restablecido el estado de cosas existente con anterioridad al deslinde practicado por orden de la demandada.

*Revocada la sentencia apelada y dictada en su lugar otra declarando con lugar la demanda sin especial condenación de costas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.