ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrente, v. ROSALÍA RODRÍGUEZ y ROBERTO GONZÁLEZ LAGO, demandados y recurridos.

Número: R-74-12          Resuelto: 1ro. de abril de 1975

*Myriam Naveira de Rodón, Procuradora General,* y *Magda E. Haidar de Martí,* y *Rolando Rodríguez Ossorio, Procuradores Generales Auxiliares,* abogados del recurrente; *A. Nazario Janer,* abogado de Roberto González Lago; *Luis E. García Benítez, Emilio Díaz Santana, José Garrido Monge* y *Víctor Sánchez Fernández,* abogados de Rosalía Rodríguez.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

En *Texaco Inc.* v. *Srio. de Obras Públicas,* 85 D.P.R. 712 (1962), reconocimos que los colindantes con calles y caminos tienen un derecho de acceso a la vía pública. Advertimos, sin embargo, que este derecho no era absoluto y que estaba sujeto al ejercicio razonable del poder de razón de estado para reglamentar el uso de las carreteras en beneficio del bien común. Partiendo de este principio denegamos en dicho caso la compensación reclamada por la eliminación del acceso directo de una estación de gasolina a la Carretera Núm. 26 al convertirse ésta en Carretera Expreso Tipo A con accesos limitados. No fue necesario en *Texaco* considerar el alcance de este derecho de acceso cuestión que ahora abordamos.

En el presente caso el tribunal de instancia distinguió la aplicación de lo resuelto en *Texaco* a base de que aquí la pérdida de acceso advino como resultado de una expropiación

forzosa, lo cual requiere una justa compensación, y no en el ejercicio del poder de razón de estado como en *Texaco*. En consecuencia el tribunal concedió la cantidad de $64,496.00 en concepto de daños por la pérdida de acceso directo a la Carretera Núm. 1.

Veamos los hechos a continuación:

El Estado Libre Asociado inició un procedimiento de expropiación forzosa para adquirir varias parcelas con el propósito de construir el proyecto Carretera Expreso Las Américas Tramos I y II en Río Piedras. Las parcelas pertenecientes a la recurrida Rosalía Rodríguez—las números 23, 23A, 23B, 24 y 25—formaban parte de una finca compuesta por dos predios independientes separados por la Carretera Núm. 1. Las parcelas 23A, 24 y 25 formaban parte del predio que colindaba y tenía acceso a la Carretera Núm. 1. Las parcelas 23 y 23B tenían acceso tanto a la Carretera Núm. 1 como a la antigua Carretera Núm. 1 de Río Piedras a Caguas y que hoy tiene el número 838.

Las parcelas 23C y 23D pertenecientes al recurrido Roberto González Lago formaban parte de una finca que también colindaba y tenía acceso a las Carreteras Núms. 1 y 838.

Como resultado de la conversión de la Carretera Núm. 1 a una de accesos controlados los remanentes de las parcelas de los recurridos perdieron su acceso directo a dicha carretera. Los predios del recurrido González Lago continuaron teniendo acceso directo a la Carretera Núm. 838, al igual que el remanente de las parcelas 23 y 23B de la recurrida Rosalía Rodríguez. En cuanto al remanente de las parcelas 23A, 24 y 25 el Estado proveyó un acceso de cuatro metros de ancho por cincuenta metros de largo el cual conduce hasta una de las calles de la Urbanización San Ignacio y de ahí, a la Carretera Núm. 1.

Las partes admiten que todos los predios retienen acceso indirecto a la Carretera Núm. 1 a través de carreteras cercanas. No obstante, el tribunal de instancia concedió un quince

por ciento de daños por la pérdida de acceso directo a la Carretera Núm. 1 los que estimó en la cantidad de $64,496.00, a saber: $42,307 para la recurrida Rosalía Rodríguez y $22,189.00 para el recurrido González Lago. Como ya dijimos, el tribunal de instancia distinguió el caso de *Texaco* señalando que la pérdida de acceso en dicho caso no surgía como consecuencia de una expropiación forzosa y sí como ejercicio del poder de reglamentación del Estado. Al respecto expresó:

"... Debemos considerar que uno de los atractivos principales del predio expropiado antes de la expropiación era que tenía frente a estas dos carreteras con acceso a ambas en toda la extensión de estos frentes. Al perder en su totalidad el acceso que daba a la carretera Núm. 1, el hecho de retener los accesos indicados no salva la pérdida en atractivo para un comprador del remanente lo que evidentemente tiene que reducir su valor en el mercado.

Esta pérdida de valor del remanente es la que hemos determinado debe ser compensada a la parte demandada por surgir como consecuencia de la expropiación que es una situación de hechos distinguible del caso de *Texaco* v. *Srio. de Obras Públicas* (85 D.P.R. 712) antes referido."

El tribunal justifica la compensación por la pérdida de acceso estableciendo una distinción doctrinal sobre la frágil base de una dicotomía de poderes, el de dominio eminente y el de reglamentación para la protección del bienestar general. No se puede abordar esta cuestión en forma tan conceptual y legalista. Hay que enfocarla en forma pragmática, es decir, como lo que es, como un área más de intereses en conflicto. Por un lado el interés de una sociedad que reclama válidamente carreteras más seguras, cómodas y de tránsito más acelerado, y por otro lado, el derecho individual al disfrute de su propiedad sin restricciones injustificadas. La función judicial consiste aquí en establecer un balance razonable entre esos intereses, dándole debido peso a diversos factores, tales como la naturaleza de la obra, su necesidad e importancia en la

protección del bien común, el impacto fiscal de la compensación frente a la magnitud del daño y la posibilidad de proveer otros accesos.

■ El Estado no puede actuar en forma arbitraria o irrazonable, no importa la naturaleza del poder que ejercite. Aun el poder de reglamentación para protección del bienestar general está sujeto a criterios de razonabilidad. *Warner Lambert Co.* v. *Tribunal Superior,* 101 D.P.R. 378 (1973) ; *E.L.A.* v. *Márquez,* 93 D.P.R. 393, 403 (1966). Se sabe, que una reglamentación irrazonablemente onerosa puede constituir una confiscación que obligue al pago de compensación. *Goldblatt* v. *Hempstead,* 369 U.S. 590 (1961) ; *Penna. Coal Co.* v. *Mahon,* 260 U.S. 393 (1922), Sax, Joseph L.: *Takings and the Police Power,* 74 Yale L.J. 36.

■ Por otro lado, el ejercicio del poder de dominio eminente no supone el pago de compensación por cualquier disminución del valor del remanente. *Penna. Coal Co.* v. *Mahon,* supra, 413. Stoebuck, William: *The Property Right of Access versus The Power of Eminent Domain,* 47 Texas L. Rev. 733–739. "El Gobierno"—apuntó sabiamente el Juez Holmes— "apenas podría funcionar si los valores en relación con la propiedad no pudieran disminuir en alguna medida sin el pago de compensación. Por largo tiempo se ha reconocido que algunos valores se disfrutan bajo una limitación implícita y deben ceder ante el poder de razón de estado." *Penna. Coal Co.* v. *Mahon,* supra, 413.

La cuestión entonces se plantea en términos de si la pérdida de acceso es de naturaleza compensable y no si la pérdida disminuyó el valor del remanente. Planteada así, no tiene importancia la dicotomía de poderes, ya que la compensación no depende meramente del ejercicio del poder de dominio eminente, depende de la naturaleza de la disminución de valor, de si es ésta compensable o no lo es.

■ Hay prácticamente unanimidad de criterio en que debe compensarse la destrucción total del derecho de acceso. *Texaco Inc.* v. *Srio. de Obras Públicas*, supra, a la página 726; Clarke, Owen: *The Limited-Access Highway*, 27 Wash. L. Rev. 111, 123; York, James: *Eminent Domain* v. *Police Power as Related to the Abutting Owner's Right of Access*, 14 Baylor L. Rev. 70. Ello constituye para todos los efectos una confiscación (*taking*), ya que una propiedad enclavada pierde su valor económico, y por lo tanto, el dueño debe ser compensado. De otra manera, la garantía constitucional que protege contra el despojo de propiedad sin el debido proceso de ley no tendría efecto práctico. Y ello es así, independientemente de que la privación total de acceso sea consecuencia de una expropiación forzosa o de una reglamentación del Estado en protección del bienestar general.

Las diferencias de criterio propiamente surgen, no ya con respecto a la pérdida total, sino en relación con las restricciones o limitaciones al acceso. *Texaco* v. *Srio. de Obras Públicas*, supra; 2A Nichols: *On Eminent Domain*, sec. 6.4442, pág. 6-243; Cromwell, Gardner: *Loss of Access to Highways: Different Approaches to the Problem of Compensation*, 48 Va. L. Rev. 538; Johnston: *Developments in Land Use Control*, 45 Notre Dame Law. 399, 422. Anotación: *Abutter's Access—Direct Regulation*, 73 A.L.R.2d 652.

■ La regla predominante en las diversas jurisdicciones de los Estados Unidos es al efecto de que el propietario sólo tiene derecho a un acceso razonable a su propiedad; definiéndose este derecho como la facultad de entrar y salir del fundo al sistema general de vías públicas y no a una carretera específica. Clarke, *op. cit.* supra pág. 124; *Stoebuck, op. cit.* supra págs. 735, 736, 754, 765; Covey, Jr., Frank: *Frontage Roads: To Compensate or not to Compensate*, 56 Nw. U.L. Rev. 587, 593; Moore, Peyton H.: *Nature and Compensability of Access*, Institute of Eminent Domain (1961), pág. 10, Anotación:

*Access to Highway—Compensable Limitation*, 42 A.L.R.3d 13, 24, y sig.

■ Generalmente, cuando se convierte una carretera convencional en una de tipo expreso se provee acceso a los predios colindantes a través de una calle marginal. También puede proveerse acceso, como se hizo en el presente caso, construyendo un tramo que conecte con una calle cercana que a su vez conecte con el sistema general de vías públicas. El hecho de que estos accesos resulten más largos e indirectos no da base a compensación pues se presume que éstas son las molestias e inconveniencias que los propietarios vienen obligados a compartir con el resto de la comunidad.

En la consideración del problema no puede soslayarse que la tierra en Puerto Rico es un recurso natural escaso y de continuo incremento en valor, resultado natural del aumento poblacional y el desarrollo industrial. Torres Rigual: *Control of Land Value Through Taxation*, 23 Rev. C. Abo. P.R. 419. Tampoco se puede esquivar la realidad de que los recursos fiscales no son ilimitados y sería en extremo gravoso para el fisco extender el derecho de acceso más allá de lo razonable pues ello afectaría adversamente el desarrollo del programa de construcción de carreteras de accesos controlados, que son esenciales para la mayor seguridad, comodidad y celeridad del tránsito interurbano.

■ En el caso de autos, como ya vimos, el tribunal de instancia concluyó que los predios pertenecientes a los recurridos retienen acceso indirecto a la Carretera Núm. 1 a través de carreteras cercanas. Los predios del recurrido González Lago tienen acceso directo a la antigua Carretera Núm. 1, hoy Núm. 838, al igual que el remanente de las parcelas 23 y 23B de la recurrida Rosalía Rodríguez. En cuanto al resto de los predios, el Estado proveyó un acceso de cuatro metros de ancho por cincuenta metros de largo el cual conduce hasta una de las calles de la Urbanización San Ignacio y de ahí, a la Carretera Núm. 1.

Consideramos que los anteriores son accesos razonables y, por tanto, concluimos que erró el tribunal de instancia al conceder a los recurridos compensación en concepto de pérdida de acceso.

*Se dictará sentencia modificando la sentencia recurrida a los fines de eliminar las partidas de $42,307 y $22,189 concedidas a los recurridos Rosalía Rodríguez y Roberto González Lago, respectivamente, en concepto de daños por pérdida de acceso. Así modificada se confirma.*