ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrido, *v.* JOSÉ MERCADO CARRASQUILLO, demandado y recurrente.

*Número:* R-75-124       *Resuelto:* 4 de mayo de 1976

*Víctor Luis Colón*, abogado del recurrente; *Luis E. Maldonado Guzmán, Héctor Nieves Cuevas* y *Benjamín Soto Maldonado* y *Belén Bazán de Pagán*, abogados de la Junta de Planificación.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En este caso hubo demanda, demanda enmendada y otra demanda enmendada. Las tres demandas son formularios de la Junta de Planificación. La primera tiene fecha de 4 de junio de 1971. La tercera tiene fecha de 22 de mayo de 1973, pero no fue presentada en el Tribunal Superior hasta el 15 de agosto de aquel año.

Se alega en la tercera demanda (la segunda demanda enmendada) que el demandado, sin haberse provisto del correspondiente permiso de construcción y "en violación a [*sic*] las Leyes y Reglamentos de la Junta de Planificación de Puerto Rico" construyó en la propiedad sita en la Calle 16, Bloque 35, Núm. 26, en Villa Carolina, Carolina, P.R. las siguientes estructuras:

A. "Ampliación en hormigón armado y bloques de 30 pies de largo por 33 pies de ancho, al posterior de la estructura principal, invadiendo el patio lateral izquierdo requerido."

B. "Ampliación en hormigón y bloques hacia el lateral izquierdo, referente a la Ave. Sánchez Castaño, de 56 pies de largo por 12 pies de ancho, ocupando el patio lateral izquierdo requerido."

C. "Ampliación hacia el delantero en aluminio de 45 pies de largo por 12 pies de ancho, ocupando el patio delantero requerido."

También alega la demanda que el demandado "Opera y/o permite que se opere un negocio de supermercado."

Solicitó el demandante que el tribunal ordenase al demandado a remover las construcciones descritas y a cesar su uso ilegal.

El demandado negó el hecho primero de la demanda y aceptó el segundo. Solicitó se declarase sin lugar la demanda.

La Sentencia, recaída en 21 de marzo de 1975, es también un formulario y consta de dos páginas.

La determinación de hecho de la ilustrada Sala sentenciadora es al efecto de que el demandado, en la propiedad antes mencionada "y en violación a [sic] las Leyes y Reglamentos de la Junta de Planificación de Puerto Rico" construyó:

"[U]na ampliación en hormigón armado y bloques de 30'-0" × 33'-0" al posterior de la estructura principal, invadiendo el patio lateral izquierdo requerido. Ampliación en hormigón y bloques hacia el lateral izquierdo, referente a la Ave. Sánchez Castaño de 56'-0" × 12'-0" ocupando el patio lateral izquierdo requerido. Ampliación hacia el delantero en aluminio de 45'-0" × 12'-0" ocupando el patio delantero requerido."

Ordenó el tribunal al demandado a remover dentro del plazo de 30 días "la construcción a que se refieren las Determinaciones de Hechos de la presente Sentencia." Aunque la Sentencia se expresa en singular (dice, "la construcción") las determinaciones de hecho mencionan tres estructuras.

El peticionario plantea, en síntesis, los siguientes señalamientos de error: (1) El tribunal no tomó en consideración que el peticionario obtuvo un cambio en la zonificación de R-3 a C-1; (2) no tomó en consideración que el Reglamento de Zonificación permite que no se observen patios laterales en distritos C-1; (3) tampoco tomó en consideración que dicho Reglamento no requiere patios delanteros en distritos C-1;

(4) que la Junta de Planificación le otorgó un permiso de uso al recurrente, luego de estar levantadas las construcciones que se alega que son ilegales; y (5) que la Junta de Planificación incidió en incuria por largos períodos de tiempo.

En este caso se trata de un solar de 526 metros cuadrados que colinda por el frente con la Calle 16 antes mencionada, y por el fondo con la Calle Dr. Sánchez. Por sus lados colinda con otros dos solares ya edificados.

Antes de que se le cambiara la clasificación al solar de R-3 a C-1, existía en el mismo una casa de vivienda, estructura que, aunque dedicada ahora a supermercado, continúa existiendo. Surge de la prueba del Estado que antes de la reclasificación el recurrente obtuvo permiso para construir en el fondo del solar una estructura de hormigón accesoria de un área de 30 pies por 33, separada de la casa original, pero que violó los términos del permiso al unir la nueva estructura a la edificación principal.

Durante el tiempo que el recurrente construyó la mencionada ampliación, o poco después, construyó, sin autorización de la Junta de Planificación, dos ampliaciones adicionales. Una de dichas ampliaciones es una estructura de hormigón con un área de 56 pies por 12, construida en el patio lateral izquierdo del solar, unida a la estructura principal. La otra ampliación clandestina es un alero de aluminio con un área de 45 pies por 12, que unió a la construcción de hormigón que se extiende a lo ancho del fondo del solar.

Para visualizar mejor el cambio físico ocurrido es necesario advertir que el recurrente invirtió las posiciones de la entrada o fachada principal del edificio y la del fondo o parte trasera del edificio y del solar. Originalmente la entrada principal de la casa era por la Calle B, la cual es una calle residencial, y el fondo de la casa y del solar daba a la calle Dr. Sánchez, la cual es una avenida de mayor tránsito. Al dedicar la casa a negocio, el recurrente estableció la entrada principal del mismo por la avenida, la llamada Calle Dr. Sán-

chez, y el fondo o patio trasero del negocio lo estableció hacia la Calle B antes mencionada, hacia donde daba la entrada principal de la vivienda. Es fácil comprender que para fines comerciales era más conveniente que el frente del negocio diese para la avenida y no para la calle residencial.

El alero de aluminio en cuestión está adosado a la actual entrada principal del negocio que da a la avenida denominada Calle Dr. Sánchez. Protege de los elementos el frente del negocio y sus puertas.

De acuerdo con la declaración del testigo del Estado, el Inspector del Negociado de Permisos de la Junta de Planificación, Sr. Rubén Hernández Sánchez, la única estructura que actualmente no cumple con los Reglamentos de Planificación es el alero de aluminio porque no deja un patio de 6½ pies de ancho. Puede deducirse que si al alero, que tiene un ancho de 12 pies, se le corta una franja de 6½ pies, todo lo edificado se ajustaría a las normas para solares clasificados C-1. Observamos que el Reglamento, en lo que concierne a patios delanteros de solares C-1, no requiere dichos patios en ciertas circunstancias y en otras los requiere, 23 R.&R.P.R. sec. 9-209.

Observamos también que aleros y otras estructuras voladizas pueden extenderse dentro de los patios requeridos hasta un metro de distancia. 23 R.&R.P.R. sec. 9–218. Al ser contrainterrogado sobre estos extremos el Inspector Hernández Sánchez declaró que no tiene conocimiento amplio de los Reglamentos de Planificación; que conoce poco de ellos.

■ Hemos sostenido consistentemente las facultades del Estado para regular las materias de planificación, uso de terrenos, zonificación y urbanismo porque son reglas indispensables para la vida civilizada, especialmente en un país industrial y densamente poblado como el nuestro, y así lo seguimos creyendo, [1] pero dadas las circunstancias de este caso somos

---

[1]*Sands* v. *Ext. Sagrado Corazón, Inc.,* 103 D.P.R. 826 (1975); *E.L.A.* v. *Rodríguez,* 103 D.P.R. 636 (1975); *Sucn. de Victoria* v. *Iglesia*

de opinión que debe revocarse la sentencia recurrida, con la excepción de dejar pendiente lo relativo a la legalidad o ilegalidad del alero de aluminio. Devolveremos el caso para que se celebre una vista sobre este extremo y el tribunal de instancia haga conclusiones de hecho específicas sobre el mismo. Nos explicamos.

La sentencia peca de exceso al ordenar la destrucción de unas ampliaciones que la prueba del Estado no demostró que estuviesen en violación de la Ley o del Reglamento. La situación del alero no ha sido precisada y es necesario hacerlo. La reclasificación del solar residencial a comercial pudo haber estado bien o no, pero la hizo la propia Junta de Planificación y el Estado no impugna esa acción. También surge de la prueba que el Director de Permisos de la Oficina Regional de San Juan le otorgó un permiso de uso al recurrente en 1ro. de diciembre de 1972 para operar un colmado-carnicería en aquel lugar.

Sobre esto último conviene, sin embargo, aclarar que en los casos en que realmente hay estructuras ilegales o clandestinas el mero hecho de que un Oficial de Permisos otorgue un permiso de uso no las convierte en estructuras legales. Ningún funcionario ni empleado puede, en ausencia expresa de ley, hacer legal lo que es ilegal o contravenir las disposiciones de las leyes y de los reglamentos. En este caso nos confrontamos con la situación de que la propia Junta reclasificó el solar en C-1.

El demandante presentó un extenso alegato en el cual incluye una amplia relación de hechos, mucho más completa que la que aparece en la sentencia del tribunal de instancia. Obviamente no podemos fallar a base de los "hechos" que nos presentan las partes en sus alegatos. Tenemos que atenernos

*Pentecostal,* 102 D.P.R. 20 (1974); *Torres* v. *Rodríguez,* 101 D.P.R. 177 (1973); *Cervecería Corona* v. *Sec. Obras Públicas,* 97 D.P.R. 44 (1969); *Texaco* v. *Sec. Obras Públicas,* 85 D.P.R. 712 (1962).

a las conclusiones de hecho del tribunal de instancia y a la transcripción de evidencia.

 ▮ Para casos futuros, nos parece que la mejor práctica sería que la demanda informe al demandado qué artículos de la Ley y qué artículos del Reglamento ha violado. Eso sería una información más útil y más precisa que meramente informarle que actuó "en violación a las Leyes y Reglamentos de la Junta de Planificación." Informado sobre los artículos de la Ley o del Reglamento que haya violado, el demandado puede corregir las fallas, si lo desea, o puede defenderse. No debe entenderse que estamos en contra de que se utilicen formularios impresos o preparados de cualquier otra forma apropiada. Los formularios pueden simplificar y acelerar los procedimientos, todo lo cual es muy deseable, pero de todas maneras la demanda del Gobierno debe ser lo más clara y específica posible, dentro de las circunstancias, para que el demandado sepa qué se le imputa y pueda tomar una acción útil, cívica y apropiada.

*Se revocará la sentencia recurrida, con la excepción de que se devolverá el caso para que se celebre una vista sobre la legalidad o ilegalidad del alero de aluminio y para que la ilustrada Sala sentenciadora haga determinaciones específicas de hechos sobre ese particular, que es el único que dejamos aquí sin resolver.*

Los Jueces Asociados Señores Torres Rigual y Negrón García concurren en el resultado.